AUG 5 '25 PM 4:22
RCV'D - USDC FLO SC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

SHANNON CHESTNUT,

        Plaintiffs,                Case No. _____

v.

UNITED STATES OF AMERICA;
CENTER FOR ORANGUTAN AND
CHIMPANZEE CONSERVATION, INC.,
SAVE THE CHIMPS, INC., US FISH AND
WILDLIFE SERVICE; US DEPARTMENT
OF THE INTERIOR; DEPARTMENT OF JUSTICE;
and JOHN
DOES 1 – 99,

        Defendants.

_____ /

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Shannon Chestnut, appearing[1] pro se, brings suit against the Defendants under the

Endangered Species Act; the Administrative Procedures Act, and South Carolina public

nuisance law. This suit seeks to prevent the Defendants from violating the Endangered Species

Act by committing a prohibited "take" of endangered species through family separation,

harassment, and other harm.

## INTRODUCTION

1.      Defendants are believed to play a role in the criminal forfeiture of four

chimpanzees – Joey, Angada, Tara, and Vanara, that reside at the Myrtle Beach Safari Park in

Myrtle Beach, South Carolina.

_____

[1] Plaintiff is not an attorney, but has experience in research as a Registered Nurse. Plaintiff
drafted this Complaint with the help of Artificial Intelligence Models and by using documents
made available on websites of organizations like the Animal legal Defense Fund and PETA.

2.      The forfeiture of the chimpanzees is part of the criminal punishment imposed upon Andrew Sawyer and Bhagavan "Doc" Antle for money laundering crimes.

3.      On information and belief, Sawyer and Antle forfeited whatever interest they had in the chimpanzees as part of their plea deals with the United States Government. These two men are not believed to be participating in the transfer of the chimpanzees, but they are not taking any action to prevent the harm that will come to at least eight chimpanzees if they are moved.

4.      On information and belief, three of the chimpanzees – Angada, Tara, and Vanara – were selected for forfeiture because they arrived at the Myrtle Beach Safari after captive chimpanzees were added to the list of endangered species by the U.S. Fish and Wildlife Service in 2015. The Plaintiff is unaware of the violation that occurred regarding these three chimpanzees.

5.      The fourth chimpanzee is a 20-year-old known as "Joey". Joey's former owner, Andrew Sawyer, transferred Joey to Myrtle Beach Safari Park's ownership in late 2016.

6.      On information and belief, the Government targeted Joey for forfeiture at the request of the People for the Ethical Treatment of Animals ("PETA"), an organization of significant influence with the Fish and Wildlife Service.

7.      In mid-2017, more than 6 months after Sawyer transferred Joey to Antle, PETA brought suit against Sawyer in the Eastern District of Missouri. The suit alleged that Joey should be handed over to PETA because Joey was the victim of a take.

8.      PETA obtained an order in 2019 from the Eastern District of Missouri, which ordered Sawyer to transfer whatever interest he had in Joey to PETA. Because Sawyer had no interest in Joey, the 2019 order was of no effect.

2

9.    On information and belief, PETA saw Sawyer's arrest as an opportunity to get the Government to force Joey's forfeiture, which it could not accomplish on its own.

10.    The chimpanzees are part of an eight-chimpanzee family that has lived together and formed familial bonds with one another since their arrival at the Myrtle Beach Safari Park.

11.    According to PETA, Chimpanzees typically live in large groups, "and male chimpanzees never leave the group that they're born into, so the mother-son bond is extremely strong. . . . [C]himpanzees are capable of suffering from loneliness, frustration, and depression." (*See* Urge the DeYoung Family Zoo to Retire Chimpanzees to Accredited Sanctuaries[2])

12.    PETA warns against the separation of chimpanzees from their chimp families because, while they are humans' closest living genetic relatives, unlike humans, chimpanzees "are never separated from their families and troops. . . They care deeply for their families and forge lifelong friendships." (*See* Chimpanzees in Laboratories[3])

13.    As PETA has noted[4], the law prohibits illegal conduct such as violations of the ESA, and provides mechanisms for public authorities to investigate and prosecute such conduct.

14.    Although PETA's mission requires it to support efforts to end illegal conduct, such as the alleged taking, PETA's feelings towards Antle have led the organization to encourage the infliction of harm on the chimpanzees. Without the support of the organization that believes itself to be the caretaker for all animals, Plaintiff is forced to act in the Chimpanzees' interest on her own.

---

[2] https://www.peta.org/action/action-alerts/deyoung-family-zoo/
[3] https://www.peta.org/issues/animals-used-for-experimentation/chimpanzees-laboratories/
[4] *See* PETA v. Waccatee Zoo, 4:22-CV-01337-JD (Dkt. 1, ¶ 253).

15.   The Defendants plan to rip four chimpanzees away from their eight-chimpanzee family and to send them to a sanctuary where the chimpanzees have never been and where they have no established chimpanzee family or bond.

16.   Plaintiff seeks to stop the Defendants from removing the four chimpanzees because doing so will harm, harass, and, on information and belief, will kill some or all eight chimpanzees.

17.   Specifically, separating a chimpanzee family and dividing it in half will cause the chimpanzees to suffer psychological harm and distress amounting to injury and significantly disrupt their normal behaviors in a manner that puts their physical and psychological well-being at risk of further injury.

18.   The Defendants' planned action will also violate South Carolina public nuisance law because it will cause injury to the animals in South Carolina, constituting inhumane cruelty.

### JURISDICTION AND VENUE

16.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Endangered Species Act, 16 U.S.C. §§ 1531-1544, 28 U.S.C. § 2201 (Declaratory Judgment Act) and the United States Constitution.

17.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1) because substantial events giving rise to this action occurred within this District, and pursuant to 28 U.S.C. § 1391(e)(1)(C), because Plaintiff resides in this District. The chimpanzees and the conduct related to them are also located in this District.

18.     Some or all Defendants have informed others of their intent to ignore the provisions of the ESA regarding "takes" and to remove these four chimpanzees from their chimp family.

19.     The Secretary of the Interior has not commenced an action against Defendants to impose a penalty under the ESA or its implementing regulations. The United States has not initiated a criminal prosecution against the Defendants to address ESA-related violations. 16 U.S.C. § 1540(g)(2)(A)(ii) – (iii).

20.     This Court has supplemental jurisdiction over the South Carolina state law claims under 28 U.S.C. § 1367(a). This Court has original jurisdiction under 16 U.S.C. § 1540(g), and 28 U.S.C. § 1331. The state law claims are so related to the underlying federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

21.     Venue for public nuisance claims is appropriate in this judicial district under 28 U.S.C. § 1391. The public nuisance alleged in this Complaint will occur on premises located in this judicial district.

## PARTIES

22.     Plaintiff Shannon N. Chestnut is a citizen of South Carolina who derives personal, recreational, educational, and aesthetic benefits from being in the presence of animals and observing animals in humane and familial settings, both in person and through media. Chestnut has visited zoos, animal parks, and other establishments to view animals and observe their social structures.

23.     In 2008, Chestnut learned about the T.I.G.E.R.S. Foundation, which is associated with the Myrtle Beach Safari, and its efforts to promote conservation of a variety of

species. Chestnut learned about T.I.G.E.R.S.'s mission, the standard of care given to the animals housed at the Myrtle Beach Safari, and witnessed the education provided to herself and others who were visiting the T.I.G.E.R.S. and Myrtle Beach Safari facility.

24.     Chestnut has been a patron and supporter of Myrtle Beach Safari and its conservation efforts since 2008. In that time, Chestnut has developed an aesthetic and emotional connection with the animals at the park, including the chimpanzees.

25.     Chestnut has developed a lifelong interest in animals and has gained knowledge about, among other things, the social habits of chimpanzees through research and reading articles posted on animal welfare websites, such as PETA.com. Chestnut is aware that separating the chimpanzees from their chimpanzee family will cause harm to all chimpanzees involved, and as a result of her interest in the chimpanzees, Chestnut will also suffer harm and concrete injury.

26.     The imminent acts of the Defendants will deprive Chestnut of the right to personally observe the eight chimpanzees living in a setting compatible with the ESA, causing an aesthetic injury to Plaintiff.

27.     The injury Plaintiff will suffer will be traceable to the conduct of the Defendants that allowed or forced the separation of the chimpanzee family.

28.     A favorable decision in this case will redress Plaintiff's injury by stopping the take and leaving the chimpanzee family intact.

29.     Defendant United States of America is the federal government and is sued as the real party in interest for the actions of its agencies and officials in seizing and seeking forfeiture of endangered chimpanzees.

30.    The Defendant, Center For Orangutan And Chimpanzee Conservation, Inc., is named because, on information and belief, it is the facility chosen by PETA and the United States to receive the four chimps who are to be ripped away from their chimp family.

31.    The Defendant, Save The Chimps, Inc., is named because it is another facility known to be chosen by PETA and others to receive chimpanzees that are removed from their homes through court action.

32.    Defendant United States Fish and Wildlife Service (FWS) is the federal agency within the Department of the Interior responsible for enforcing the Endangered Species Act and protecting endangered species, including chimpanzees.

33.    Defendant Department of the Interior is the federal executive department responsible for wildlife conservation and ESA enforcement.

34.    Defendant Department of Justice is the chief federal law enforcement agency and legal counsel for the United States, responsible for upholding the rule of law and enforcing federal laws in civil and criminal matters on behalf of its citizens. The DOJ consists of various divisions and agencies that conduct litigation, prosecute offenders, and represent the federal government in court, including the US Marshals Service, which is tasked with the movement and disposition of forfeited property, and the U.S. Attorneys' Offices, which prosecutes and violations of the endangered species.

35.    John Does 1 – 99 are named to represent individuals, companies, and agencies that might participate in the take alleged below.

## ENDANGERED SPECIES ACT

36.     Wildlife subject to the ESA includes any listed member of the animal kingdom, including any mammal or part, product, or the dead body or parts of mammals. 16 U.S.C. § 1532(8).

37.     The ESA prohibits the "take" of any endangered or threatened species, unless otherwise permitted by a Section 4(d) special rule, within the United States. Id. at § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.21, 17.31(a).

37.     "Take" includes "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

38.     "Harm" is defined by regulation as an act which "kills or injures" an endangered or threatened animal. 50 C.F.R. § 17.3.

39.     "Harass" is defined by regulation to include an "intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." *Id.*

40.     Under the ESA, it is also unlawful for a person to "possess, sell, deliver, carry, transport, or ship, by any means whatsoever" any ESA-protected species that has been taken in violation of the Act. 16 U.S.C. § 1538(a)(1)(D). See also 50 C.F.R. §§ 17.21(d), 17.31, 17.40(r).

41.     Likewise, it is unlawful to "deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity," or "sell or offer for sale in interstate or foreign commerce" any listed species. 16 U.S.C. § 1538(a)(1)(E)-(G); 50 C.F.R. §§ 17.21(e), (f), 17.31, 17.40(I).

42.      On June 16, 2015, the U.S. Fish & Wildlife Service adopted a final rule that counted captive chimpanzees as an endangered species under the ESA. *See* 80 FR 34500.

43.      The ESA authorizes the Secretary of the Interior to issue a permit for any act that is otherwise prohibited by 16 U.S.C. § 1538, but only if such act is "for scientific purposes or to enhance the propagation or survival of the affected species" and other strict requirements are met. 16 U.S.C. §§ 1539(a)(1)(A), (c), (d).

44.      The ESA allows citizens to bring suit to enjoin "any person... who is alleged to be in violation" of the "take" provisions of the statute or of a regulation promulgated under the statute. Id. § 1540(g)(1)(A).

### SOUTH CAROLINA PUBLIC NUISANCE, STATE ANTI-CRUELTY LAW, AND FEDERAL ANIMAL WELFARE ACT

45.      Under South Carolina statute, "[a] person who erects, establishes, continues, maintains, uses, owns, occupies, leases, or releases any building or other place used for the purposes of lewdness, assignation, prostitution, repeated acts of unlawful possession or sale of controlled substances, or continuous breach of the peace in this State is guilty of a nuisance." S.C. CODE ANN. § 15-43-10(A). "[C]ontinuous breach of the peace" includes "pattern[s] of repeated acts or conduct which... directly [disturb] the public peace." S.C. CODE ANN. § 15-43-10(B).

46.      South Carolina allows private enforcement of its statutory nuisance law. Under The statute, "[whenever a nuisance is kept, maintained or exists... any citizen of the State may maintain an action in equity in the name of the State... to enjoin perpetually such nuisance, the person conducting or maintaining the nuisance and the owner or agent of the building or ground upon which the nuisance exists." S.C. CODE ANN. § 15-43-20.

47.     Under South Carolina common law, a public nuisance exists where acts or conditions subvert public order, decency, or morals. Further, if a party maintains a place where laws are publicly, repeatedly, persistently, and intentionally violated, then such place is a common or public nuisance.

48.     In the State of South Carolina, it is unlawful to knowingly or intentionally "[ill-treat] an animal," "[deprive] an animal of necessary sustenance or shelter," or "[inflict] unnecessary pain or suffering upon an animal, or by omission or commission knowingly or intentionally [cause the] acts to be done." S.C. CODE ANN. § 47-1-40(A). See also S.C. CODE ANN. § 47-1-40(B) (prohibiting the infliction of "excessive or repeated unnecessary pain or suffering upon an animal" by acts or omissions).

49.     The Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131-2159, and its implementing regulations establish bare minimum federal protections for certain categories of animals in captivity that include provisions for veterinary care, adequate shelter, and sanitation.

## FACTUAL ALLEGATIONS

### The criminal investigation and forfeiture remedies

50.     This case follows the indictment of Bhagavan "Doc" Antle and Andrew Sawyer. The indictments allege that the two men conspired to commit money laundering and that Antle conspired to violate the Lacey Act. The indictment sought to forfeit three chimps from Antle under the Lacey Act and did not seek the forfeiture of any animal in Sawyer's case.

51.     On November 21, 2023, Sawyer entered into a Plea Agreement where he agreed to plead guilty to conspiring to launder money and to forfeit "an adult male chimpanzee, 'Joey.'"

10

52.     Sawyer pleaded guilty to an Information that charged him with conspiracy to commit money laundering, and which sought forfeiture under the money laundering statutes.

53.     Neither the Indictment nor the Information set forth any nexus between Sawyer's interest in Joey and Sawyer's money laundering conviction.

54.     On June 10, 2025, the sentencing court sentenced Sawyer to 8 months' house arrest and 2 years' supervision.

55.     On June 11, 2025, a Preliminary Order of Forfeiture as to Andrew Sawyer was filed in Sawyer's case. This order acknowledged forfeiture allegations in Sawyer's original Indictment for "certain properties . . . or equivalent substitute assets . . ." but noted that Sawyer's Indictment did not seek the forfeiture of any animals.

56.     Antle's Indictment included a Lacey Act forfeiture allegation requiring Antle to forfeit all "fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of Title 16, Section 3372 or any regulation issued pursuant thereto."

57.     On August 18, 2023, Antle entered into a plea agreement whereby he would plead guilty to conspiring to violate the Lacey Act and to commit money laundering. As part of the plea agreement, Antle also agreed to forfeit his interest in three chimpanzees.

58.     On November 6, 2023, Antle pleaded guilty to an Information that alleged he conspired to violate the Lacey Act and to commit money laundering. The Information contained a forfeiture provision based solely on the money laundering statutes. (4:22-cr-00580-JD, Dkt # 223.)

59.     On May 28, 2025, Antle's sentencing court signed a preliminary order of forfeiture, which also acknowledged forfeiture allegations in Antle's Indictments for "certain properties . . . or equivalent substitute assets . . ." (4:22-cr-00580-JD, Dkt # 307, p. 1.)

60.     In both Antle's and Sawyer's Information Forfeiture claims, the Government included requests to seek forfeiture of substitute property if (a) either Defendant's property had been transferred to a third person; (b) if the property has been placed beyond the jurisdiction of the Court; or (c) if the property had been commingled with other property which cannot be subdivided without difficulty.

61.     Neither Antle's Indictment nor Information set forth any nexus between Antle's money laundering charges and the three chimpanzees.

62.     Despite that fact, the Preliminary Order of Forfeiture states that the sentencing "court has determined that the government has established the requisite nexus between the said property subject to forfeiture and the offenses for which Antle has been convicted . . ."

63.     In fact, at least three of the chimpanzees are believed to have been acquired by Myrtle Beach Safari before the money laundering conduct occurred, and none of them were involved in the act of laundering money.

64.     The government's forfeiture was not based on any violations of the Lacey Act, wildlife trafficking statutes, or any other wildlife-related offenses.

65.     Instead, and in an effort purely to punish Antle and Sawyer, the chimpanzees were seized as assets allegedly connected to money laundering violations, without regard to their status as endangered species or their complex social needs.

66.     The Defendants have stated their intent is to remove the four chimpanzees from their chimp families in Myrtle Beach and transfer them to a sanctuary in Florida.

12

67.    The government has provided no plan for maintaining the chimpanzees' family structure during or after the forfeiture proceedings, despite knowing the effect that tearing apart a chimpanzee family will have on each member of the family.

### The Chimpanzees and Their Family Relationships

68.    The chimpanzees at issue in this case are endangered species protected under the ESA. All chimpanzees, including captive individuals, have been listed as endangered under the ESA since 2015.

69.    Chestnut has learned and observed that the chimpanzee family at Myrtle Beach Safari consists of eight individuals with complex social bonds and relationships developed over years of cohabitation. The chimpanzees and their relationships are as follows:

- Joey (20-year-old male) is a special needs chimpanzee. He has numerous allergies and processes his emotions in ways that are far different from chimpanzees his age.

- Ruma (25-year-old female)

- Anjana (20-year-old female)

- Joey, Ruma, and Anjana live in a bonded relationship, forming a stable social triad

- Vali (8-year-old male)

- Sugriva (8-year-old male)

- Angada (6-year-old male)

- Angada and Sugriva live together and have formed a close fraternal bond

- Tara (5-year-old female)

- Tara and Vali have developed a strong nighttime bond, sleeping together nightly, while spending daytime hours with both Vali and Sugriva

- Vanara (3-year-old female)

- Vanara lives with Tara and has formed familial bonds with Vali and Sugriva

- Ruma and Anjana act as the mothers to all five of the younger set of chimpanzees

13

70.     Most significantly, all eight chimpanzees participate in a daily dinner ritual where they gather together as a complete family group, reinforcing their social bonds and maintaining their complex social hierarchy.

71.     These relationships represent the natural social structure that chimpanzees require for psychological well-being, as confirmed by extensive scientific research demonstrating that chimpanzees are highly social animals requiring multi-individual groups for optimal welfare, as well as organizations like PETA.

72.     Defendants' proposed plan to split a chimpanzee family in half constitutes "animal mistreatment [by] separating the animal(s) from their family or other animal companions and forcing them into artificial social groups. For species who are highly social and are adapted to spend most of their lives with their family members . . . this can be incredibly stressful and emotionally devastating." (*See* Coleman, Madison. "Mistreatment of Wild Animals in Captivity" Ballard Brief, April 2021 www.ballardbrief.org)

**Defendants' plan will violate the Endangered Species Act**

73.     The government's plan to seize and transfer half of the chimpanzees at Myrtle Beach Safari Park constitutes a "take" prohibited by ESA Section 9, specifically "harassment" as defined in 50 C.F.R. § 17.3.

74.     The disruption of the chimpanzees' established family relationships and social bonds constitutes harassment because it significantly impairs essential behavioral patterns including breeding, feeding, and social interaction.

75.     Scientific research confirms that chimpanzees separated from their social groups experience severe psychological distress, elevated stress hormones, and lasting neurological changes similar to post-traumatic stress disorder.

14

76.     The National Institutes of Health and Association of Zoos and Aquariums recommend that captive chimpanzees be housed in multi-male, multi-female, age-diverse groups of no less than seven individuals, which matches the composition of this family group.

77.     Any separation of these chimpanzees from their established family structure will cause irreparable psychological harm, constituting a prohibited "take" under the ESA.

### Due Process Violations

78.     The government's seizure of living endangered species as "assets" in a money laundering investigation violates substantive due process because it treats sentient, protected wildlife as mere property without regard to their special legal status.

79.     The government has failed to provide constitutionally adequate notice and hearing procedures that account for the unique nature of endangered species and their welfare needs.

80.     The government has failed to consider less restrictive alternatives that would preserve the chimpanzees' family structure while addressing any legitimate law enforcement concerns.

81.     The seizure violates due process because it subjects the chimpanzees to potential irreparable harm without adequate procedural safeguards, such as the instant suit, designed to protect their welfare as an endangered species.

82.     The government's application of money laundering forfeiture statutes to endangered species creates an irreconcilable conflict with the ESA's mandate to protect endangered species from "take."

83.     Congress enacted the ESA to provide comprehensive protection for endangered species, declaring that such species are "of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people."

84.     The money laundering forfeiture statutes contain no provisions addressing the welfare needs of endangered species or procedures for avoiding ESA violations.

85.     While criminal defendants can agree to negotiate pleas and forfeit property they might otherwise keep, such an agreement does not expand the powers of a court beyond what Congress intended. As a result, Antle and Sawyer's sentencing court lacked the authority to approve the forfeiture of chimpanzees acquired before money laundering conduct occurred.

86.     The government's actions demonstrate a complete failure to consider ESA requirements when executing asset forfeiture in cases involving endangered species.

**Defendants' stated intent causes Plaintiff distress, anguish, and injury**

87.     The Plaintiff derives personal, recreational, educational, and aesthetic benefits from being in the presence of animals and observing their familial bonds.

88.     The Plaintiff has visited the animals at Myrtle Beach Safari Park regularly and has viewed them interacting on a regular basis.

89.     Over the years, Plaintiff developed affinities toward the family of chimpanzees and their family bonds and traditions.

90.     The Plaintiff has developed a keen interest in Joey, a 20-year-old special-needs chimpanzee. Plaintiff is aware of the bond Joey has with Ruma and Anjana, as well as the care required to keep Joey healthy on a daily basis. Plaintiff fears for Joey's life if he is removed from his chimp family because Joey does not process things, such as separation and loss, like typical 20-year-old chimpanzees.

91.     The Plaintiff has spent her own time and efforts researching the effect of separation on the chimpanzees at Myrtle Beach Safari, including finding and reading articles and publications on websites that support her position, like peta.org and aldf.org. The Plaintiff has a very real fear that the proposed separation will harm all eight chimpanzees in a way that will negatively impact their lives forever.

92.     As an individual who visited the chimpanzees at Myrtle Beach Safari, Plaintiff formed specific emotional attachments to them, and has made efforts on behalf of the chimpanzees to protect them from the Defendants' planned actions. As a result, the Plaintiff has suffered significant and particularized injuries, different in kind and degree than those suffered by the general public because of Defendants' planned attack on the family of chimpanzees.

93.     Defendants have injured and continue to injure Plaintiff's personal, aesthetic, recreational, and educational interests by threatening to harm the chimpanzees, thus depriving Plaintiff of the right to personally observe animals living in their family-bonded tribe.

94.     Because Plaintiff appreciates, is attached to, and is concerned about animal welfare, they wish to see the chimpanzee family left intact as recommended by every expert who has offered an opinion about chimpanzees and their social structure.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
Arbitrary and Capricious Agency Action
(5 U.S.C. § 706(2)(A))

95.     Plaintiff incorporates by reference all previous allegations.

96.     This action seeks to enjoin a threatened action by federal agencies (hereinafter, "Defendant Agencies") concerning the forfeiture and subsequent transfer of endangered

chimpanzees. This proposed action, if executed, will cause severe psychological and behavioral harm to these chimpanzees due to the inevitable separation of their established family units.

97.     Defendant Agencies' threatened action constitutes an unlawful "take" as defined by the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq., and represents an arbitrary and capricious agency action, thereby violating the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

98.     Plaintiff has standing to bring this action pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(A), which authorizes "any person" to commence a civil suit to "enjoin any person, including the United States and any other governmental instrumentality or agency... who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof".

99.     Plaintiff's interest in preventing the unlawful "take" and ensuring the conservation and humane treatment of endangered chimpanzees falls squarely within the "zone-of-interests" protected by the ESA.

100.    Congress's intent, as demonstrated by 16 U.S.C. § 1540(g) and the ESA's policy that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this Act", establishes Plaintiff's statutorily created legal interest as paramount to the Government's forfeiture claim when that claim results in an unlawful "take" of an endangered species.

101.    The ESA explicitly prohibits the "take" of endangered species without a permit.

102.    As alleged above, the Defendant Agencies' threatened forfeiture and transfer of the chimpanzees will result in a "take" as defined by the ESA, specifically by causing "harm"

through the significant impairment of essential behavioral patterns due to severe psychological and behavioral distress from family separation.

103.    The actions of the Defendant Agencies are not authorized under the ESA, nor have any Defendant Agency adequately mitigated the severe harm that its actions will cause.

104.    Therefore, the Defendant Agencies' threatened action directly violates the Endangered Species Act, rendering it "not in accordance with law" under 5 U.S.C. § 706(2)(A).

105.    Defendant Agencies' decision to proceed with the threatened transfer demonstrates a profound failure to adequately consider the well-documented scientific evidence regarding the severe psychological and behavioral harm caused by separating chimpanzee families.

106.    Defendant FWS' action is inconsistent with its own prior findings and stated policy, as articulated in the 2015 FWS rule listing all chimpanzees as endangered, which emphasized the importance of humane treatment and emotional well-being for the species.

107.    Defendant Agencies' have failed to provide a compelling, legally sound justification for proceeding with the transfer despite knowing it will cause severe harm, thus rendering its decision unreasonable and an abuse of discretion.

108.    In the post-*Loper Bright Enterprises v. Raimondo* legal landscape, courts are required to exercise independent judgment in determining whether an agency has acted within its statutory authority and whether its actions are reasoned, without deferring to an agency's legal interpretations. This independent scrutiny further reveals the arbitrary and capricious nature of Defendant Agencies' threatened action.

109.    The Administrative Procedure Act, 5 U.S.C. § 702, waives sovereign immunity and permits suits against the United States for relief other than money damages.

19

110.     This action seeks to enjoin a threatened action by the Defendant Agencies' concerning the forfeiture and subsequent transfer of endangered chimpanzees. This proposed action, if executed, will cause severe psychological and behavioral harm to these chimpanzees due to the inevitable separation of their established family units.

111.     This threatened action constitutes an unlawful "take" as defined by the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq., and represents an arbitrary and capricious agency action, thereby violating the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A).

112.     Chimpanzees (Pan troglodytes), both wild and captive, are classified as endangered species under the Endangered Species Act (ESA) by a final rule issued by the U.S. Fish and Wildlife Service (FWS) on June 12, 2015. The FWS's 2015 listing decision explicitly aimed to provide "stronger legal protections against abuse and exploitation" for chimpanzees and to "ensure humane treatment," acknowledging the importance of their "emotional well-being and need for mental stimulation".

113.     Defendant Agencies' decision to seize and remove endangered chimpanzees from Myrtle Beach Safari constitutes final agency action within the meaning of 5 U.S.C. § 704.

114.     Defendant Agencies' actions were arbitrary, capricious, abuses of discretion, and otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) because Defendant Agencies:

    a.  Sought forfeiture in a manner not authorized by Congress;

    b.  Ignored the fact that (a) all four chimpanzees had been transferred to a third person; (b) the chimpanzees had been placed beyond the jurisdiction of the Court by virtue of the ESA; or (c) that the chimpanzees had been commingled with other property (the four other chimpanzees at Myrtle Beach Safari) which cannot be subdivided without difficulty;

    c.  Refused to request substitute property as allowed by law and its pleadings;

d. Entirely failed to consider important aspects of the forfeiture, including the welfare of the individual chimpanzees, alternative enforcement measures (including the availability and request for a substitute property order), and the scientific value of the existing captive population;

e. Offered explanations for their decision that run counter to the evidence that all eight chimpanzees will suffer harm as a result of the agencies' action;

f. Failed to articulate a rational connection between the facts found and the choice made to remove the chimpanzees and rip the chimpanzee family apart rather than seeking alternative forms of punishment that harm only the criminal defendants and not defenseless animals; and

g. Acted in a manner so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

115. Specifically, Defendant Agencies acted arbitrarily and capriciously by

a. Failing to follow procedures required by the ESA prior to the forfeiture;

b. Ignoring scientific evidence regarding the stress and harm that relocation would cause to all eight chimpanzees;

c. Failing to consider available alternatives to seizure and removal;

d. Acting inconsistently with their own published policies and prior enforcement practices;

116. The forfeiture and transfer of the chimpanzees at issue will demonstrably result in the separation of an established chimpanzee family, causing severe psychological and behavioral harm to these highly social and cognitively complex animals.

117. This severe psychological and behavioral harm constitutes an "injury" that "significantly impairs essential behavioral patterns" of the chimpanzees, thereby falling squarely within the regulatory definition of "harm" and thus a prohibited "take" under the ESA.

118. The Administrative Procedure Act (APA) mandates that reviewing courts "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law".

119.    Plaintiff is informed and does believe she is entitled to an order of this Court enjoining the transfer of the chimpanzees and any other conduct of the Defendants that would harm or harass the chimpanzees.

## COUNT II: CLAIM FOR INJUNCTIVE RELIEF

120.    Plaintiff incorporates by reference all previous allegations.

121.    Plaintiff seeks a temporary restraining order and preliminary injunction under Fed. R. Civ. P. 65, enjoining Defendants from:

> a. Seizing, forfeiting, removing, or taking away any chimpanzees from Myrtle Beach Safari;
>
> b. Taking any action that would harm or harass any animal at Myrtle Beach Safari; and
>
> c. Causing or encouraging others to harm or harass any animal at Myrtle Beach Safari.

## GROUNDS FOR INJUNCTIVE RELIEF

122.    Myrtle Beach Safari houses numerous animals beyond the chimpanzees described above, including two orangutans, six gibbons, and one baboon, many of which are endangered or threatened species protected under the ESA.

123.    Orangutans (Pongo spp.) are a critically endangered species fully protected under the ESA, and gibbons include multiple endangered species protected under federal law.

124.    These animals, like the chimpanzees, have developed social relationships, behavioral patterns, and environmental adaptations specific to their current housing at Myrtle Beach Safari. These social relationships include the eight chimpanzees, who live close to the other animals.

125.    The seizure of any animals at Myrtle Beach Safari as "assets" in a money laundering investigation violates the fundamental principle that living endangered species cannot be treated as ordinary commercial property subject to standard asset forfeiture procedures.

126.    Defendants' threatened seizure of all animals at the facility would constitute multiple violations of ESA Section 9's prohibition on "take" of endangered species through:

    a.  Harassment by disrupting normal behavioral patterns and social relationships;

    b.  Harm by forcing relocation that could injure or kill the animals;

    c.  Capture and collection by government seizure actions.

127.    The application of money laundering asset forfeiture statutes to seize living endangered species violates substantive due process because it treats sentient, federally protected wildlife as mere assets without regard to their unique legal status and welfare needs

128.    Defendants are unable to forfeit the chimpanzees under law applicable to the money laundering conviction.

129.    Seizing chimpanzees does not serve a compelling government interest that would justify seizing endangered species as assets, particularly when alternative remedies (such as monetary fines, substitute asset forfeiture, or facility oversight) could address any legitimate law enforcement concerns.

130.    The seizure of animals as assets in a financial crimes investigation exceeds the proper scope of asset forfeiture authority and offends the constitutional principle that government powers must be exercised for their intended purposes.

131.    Plaintiff and the animals will suffer irreparable harm if any of the chimpanzees are seized from Myrtle Beach Safari, as the disruption of established animal care relationships, social bonds, and environmental conditions cannot be undone and has no adequate remedy at law.

132.    Plaintiff respectfully requests an order of this Court that enjoins against all Defendants from transferring, moving, harming, or otherwise harassing the chimpanzees.

### COUNT III: VIOLATION OF SUBSTANTIVE DUE PROCESS
(U.S. Constitution, 5th Amendment)

133.    Plaintiff incorporates by reference all previous allegations.

134.    With the passing of the Endangered Species Act, Congress granted certain rights to those species, including protection from harm by others.

135.    Defendants' seizure and treatment of endangered chimpanzees as mere assets in a money laundering investigation violates substantive due process by failing to account for their unique legal status as protected endangered species.

136.    The Defendants' threatened actions shock the conscience and violate fundamental principles of ordered liberty by treating sentient, protected wildlife as fungible property.

137.    Defendants have failed to provide any rational basis for applying standard asset forfeiture procedures to endangered species without regard to their welfare needs or ESA protections.

138.    Plaintiff's substantive due process rights will be harmed if the chimpanzees are taken and transferred prior to her other claims being considered.

### COUNT IV: VIOLATION OF PROCEDURAL DUE PROCESS
(U.S. Constitution, 5th Amendment)

139.    Plaintiff incorporates by reference all previous allegations.

140. Defendants have failed to provide adequate notice and hearing procedures that account for the unique nature of endangered species and their welfare requirements.

141. The standard asset forfeiture procedures are constitutionally inadequate when applied to living endangered species because they fail to provide timely consideration of welfare needs and ESA compliance.

142. Defendants' seizure and forfeiture actions are arbitrary, capricious, and contrary to law because they fail to consider ESA requirements and the chimpanzees' welfare needs.

143. The Defendant Agencies' decisions, including not stopping a take, not following ESA statutes and regulations, and deciding to harm not only the chimpanzees they are attempting to forfeit but their chimpanzee family members, violate the APA by failing to provide reasoned decision-making that considers all relevant factors, including ESA compliance and scientific evidence regarding chimpanzee welfare.

144. Defendants have or will deprive the Plaintiff of her right to assert claims under the ESA to protect the chimpanzees based on their protected status without due process of law.

### COUNT V: PUBLIC NUISANCE

145. Plaintiff incorporates by reference all allegations of the Complaint.

146. Defendants' actions will create a public nuisance, including a per se public nuisance, at the Myrtle Beach Safari. This public nuisance will inflict hurt, inconvenience, and damage on the Plaintiff and the public by committing *malum in se abuses* against animals that live and will continue to live at the Myrtle Beach Safari.

147. Causing harm to the chimpanzees and other animals affected by the breakup of the chimpanzee family at Myrtle Beach Safari will create a public nuisance because such a

breakup will hurt, inconvenience, and damage Plaintiff and the public by continuously breaching the peace and subverting public order, standards of decency, and morals.

148. Myrtle Beach Safari is open to the public and operated in a location and manner that is likely to and does impact and influence the public.

149. As a direct and proximate result of Defendants' actions, a public nuisance will be created, and the local community and general public will be harmed.

150. If the Defendants are not enjoined from creating a public nuisance, Plaintiff will suffer harm different in kind and degree from that suffered by members of the public.

151. Plaintiff has particular emotional attachments to animals at Myrtle Beach Safari and will incur injuries, including but not limited to economic injury associated with the cost to view the facility and aesthetic, recreational, educational, and personal harm to her interests in seeing animals bonding in their familial and psychologically enriching setting.

152. If unabated, Defendants' conduct will inevitably and undoubtedly continue to threaten the rights of Plaintiff and the general public. An injunction prohibiting Defendants from transferring the chimpanzees away from their chimp family would redress ongoing harms to Plaintiff by Defendants' threatened conduct.


**WHEREFORE,** Plaintiff respectfully requests that this Court:

    **A.** Declare that Defendants' seizure and forfeiture of endangered chimpanzees and other animals without regard to ESA requirements violates the Endangered Species Act, the Due Process Clause, and the Administrative Procedure Act;

    **B.** Issue a preliminary and permanent injunction requiring that any seizure of the chimpanzees take place after a hearing on the matters raised in this Complaint;

    **C.** Issue a preliminary and permanent injunction prohibiting Defendants from:

        1. Seizing, removing, or taking custody of any animals currently housed at Myrtle Beach Safari as part of the money laundering investigation;

    2. Separating the chimpanzee family or transferring individual chimpanzees to different facilities;

    3. Treating living endangered species as ordinary assets subject to standard forfeiture procedures;

    4. Taking any action that would constitute a prohibited "take" of endangered species under the ESA;

    5. Receiving any animals that were taken and transported in violation of the ESA.

**D.** Order Defendant Agencies to pursue alternative enforcement remedies, including substitute asset forfeiture;

**E.** Award Plaintiff reasonable attorney fees, if incurred, and costs pursuant to 16 U.S.C. § 1540(g)(4) and other applicable law; and

**F.** Grant such other and further relief as this Court deems just and proper

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by jury.

Respectfully submitted,

Shannon N. Chestnut, RN-BSN
Pro Se
3709 Bells Lake Circle Longs,
SC 29568
(252) 213-0700

July 29, 2025

27